## German-American Title & Trust Co. *v.* Shallcross, Appellant.

[Marked to be reported.]

*Equitable ejectment—Conclusiveness as to matters litigated—Res adjudicata.*

One verdict and judgment in an equitable ejectment is not only conclusive as to the title of the land, but such judgment has all the conclusiveness of a decree in chancery as to every other matter litigated.

*Record—Extrinsic evidence as to matters litigated.*

Where the record in an equitable ejectment is so general that it does not show what particular matters were litigated, it is competent to show by extrinsic evidence what those matters were.

On a bill in equity to compel the satisfaction of a mortgage and judgment, and the extinguishment of a ground rent, it is competent for the complainant to show by extrinsic evidence that in an equitable ejectment between the same parties, the conditional verdict for the plaintiff was based upon credits given by the jury to the defendants for the amount of the mortgage, judgment and ground rent which were held by the defendants against the land.

*Equity—Jurisdiction—Bill to compel satisfaction of mortgage.*

A court of law has no jurisdiction in an equitable ejectment to compel the defendant to satisfy a mortgage for which he has received credit in the conditional verdict. The only remedy is by a bill in equity to compel the satisfaction of the mortgage.

Argued Jan. 15, 1892. Appeal, No. 171, July T., 1891, by complainant, The German-American Title & Trust Company, Committee of Francis Mawhinney, from decree of C. P. No. 4, Phila. Co., Dec. T., 1887, No. 829, dismissing bill in equity filed against Ida V. Shallcross and Lewis Stover, executors of the last will and testament of Lewis Shallcross, deceased. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK JJ.

Bill in equity to compel the satisfaction of mortgages and judgment and extinguishment of ground rents. The bill averred that the complainant had brought an action of equitable ejectment against the respondent in court of common pleas No. 1, of Philadelphia county, for the recovery of certain real estate on Frankford road and Emerald street, in the city of Philadelphia, which cause was tried in said court on May 19,

1885. That it was in evidence at said trial that complainant, being the owner of said real estate, the same was advertised to be sold by the sheriff of Philadelphia county, on the first Monday of August, 1878, under a certain judgment had against complainant, and that the defendant obtained possession of the said real estate through a corrupt combination between himself and his brother, Amos C. Shallcross, who bought in said real estate .at the said sheriff's sale as the attorney and agent of complainant, and afterward to defraud complainant out of his right to said real estate placed the title thereto in the name of the defendant. That at said trial the defendant offered in evidence a statement showing the expenditures made by him on account of said real estate, which he claimed should be repaid by the plaintiff before he should be entitled to possession, said statement containing, inter alia, the following items, to wit, a bond and mortgage for $2,000; also a bond and mortgage for $1,000 given by the plaintiff to the said Lewis Shallcross, also an assignment of ground rent, dated July 3, 1880, from Sarah W. Bacon to defendant of ninety dollars yearly (the principal being $1,500); also an assignment of ground rent of John Rose and wife to the defendant of fifty dollars yearly (the principal being $833.33⅓); also an assignment of ground rent by Francis Heyl et al. to defendant of ninety dollars per annum (the principal being $1,500); also a judgment of Justice McVaugh against plaintiff in common pleas No. 2, of March term, 1878, No. 1094, under which said sheriff's sale had taken place, and which had been marked to the use of the defendant on January 7, 1879, the defendant claiming the sum of $300, the amount paid by him for the same. That the trial judge refused the plaintiff's request that the jury be instructed that if they found from the evidence that the defendant was a trustee ex maleficio for the plaintiff, the former was not entitled to reimbursement for the expenditures made by him on account of said real estate, but instructed the jury that if they found in favor of the plaintiff they should give the defendant credit for all the sums mentioned in his statement which they believed the defendant had expended on account of said real estate, and if they found a balance in favor of the defendant they should render a verdict in favor of the plaintiff, conditional on the payment to the defendant of the amount so found by them to be due to him.

That thereupon the defendant submitted to the jury a statement showing the amount of rents received from said real estate during his possession, covering six years and seven months at $1,332 a year, amounting to $8,700, which, after giving credit to the defendant for the amount of said mortgages, ground rents, and judgment, and the other items of said statement with interest on the mortgages, ground rents, and judgment, and other items, left a balance of $1,800 in the favor of the defendant. That the jury thereupon rendered a verdict for plaintiff on his tendering to the defendant the sum of $2,293.02, the jury having taken both statements with them in their deliberations. That judgment was entered upon the verdict, defendant's application for a new trial having been refused.

That the defendant having removed the case to the Supreme Court the judgment was subsequently affirmed, that court holding, in a per curiam opinion, that the defendant was a trustee ex maleficio.

That the plaintiff paid defendant the amount of the conditional verdict with interest, on April 26, 1887, and obtained possession by virtue of a writ of habere facias possessionem on May 2, 1887, since which time he has been in possession. That notwithstanding the payment of the amount of the conditional verdict, the defendant refused to satisfy said mortgages and judgment and extinguish said ground rents, he having brought suit upon one of the said ground rents, which have been assigned to him, and that notwithstanding the payment of said mortgages and judgment in the manner recited, he threatened to proceed upon the same with the view of unjustly enforcing payment against the plaintiff.

The bill prayed for : (1) an injunction restraining the defendant from transferring said mortgages, ground rents, and judgment and from instituting or maintaining any proceedings thereunder ; (2) for a decree ordering the defendant to satisfy the mortgages and judgment of record, and execute deeds of extinguishment for said ground rents ; (3) for damages ; and, (4) for such further relief as the equities of the cause may require.

The answer denied that the defendant offered in evidence a statement showing expenditures, which he claimed should be repaid before plaintiff would be entitled to the possession ; but

that the statement referred to in the bill had been prepared by defendant in the course of negotiations with plaintiff for a settlement; that plaintiff had agreed to the terms proposed by defendant, but was unable to carry out his agreement, and that this settlement was put in evidence as part of that agreement.

The answer then alleged that the ground rents and mortgages were put in evidence merely for the purpose of showing, first, " the liens and charges against the land subject to which it had been sold by the sheriff; secondly, the annual charges in reduction of rents," but that it was argued by plaintiff's counsel, that the plaintiff was entitled to possession subject to the same charges and encumbrances that were upon the property at the time of the sheriff's sale, and that it was inequitable to make him pay in cash now more than he would be obliged to pay if he had taken title from the sheriff, and that the jury so found.

The case was referred to Adolph Eichholz, Esq., as master, who reported that the averments of the bill were substantially correct. His finding in part was as follows :

" The master finds that the facts set forth in the bill are substantially correct.

" It is true, that the defendant in his answer denies the alleged fraud, which formed the basis of the ejectment suit, and his entire testimony and considerable portion of his brother's testimony are devoted to an attempt to substantiate his position upon this point. But this was the main issue in that case and has been finally determined by the verdict of the jury in favor of the plaintiff. Had the jury found the facts to be as alleged by the defendant, their verdict must necessarily have been in his favor. The release marked 'Exhibit A' attached to the answer formed a part of the transactions between the parties that were disposed of by jury in favor of the plaintiff, and is therefore no longer an issue.

" The master is convinced beyond a doubt that the defendant gave in evidence at the trial a statement containing, among other things, the mortgages, ground rents, and judgment in question, and not merely for the purposes stated in his answer, but for the purpose of receiving credit therefor in the amount of the conditional verdict in case the jury should decide the main issue in favor of the plaintiff. Although contradicted by

the testimony of Amos C. Shallcross, plaintiff's testimony upon this point is overwhelming. The testimony is equally strong that the plaintiff presented to the jury a statement such as he alleges in his bill.

The master recommended a decree in accordance with the prayer of the bill.

The defendant filed the following exceptions to the master's report:

(1) In finding that the facts as set forth in the bill are substantially correct; (2) that the issue raised by this bill and answer is the same as tried by the jury, whereas this is a different issue upon a different title; (3) that a certain statement was put in evidence before the jury by defendant, when it was put in evidence by the plaintiff; (4) that it was put in evidence for a particular purpose, which purpose was not germane to the issue then tried; (5) that the testimony is overwhelming that the plaintiff put in evidence such a statement as he alleges; (6) that the counsel on both sides had agreed that the ground rents had been extinguished; (7) that the jury must necessarily have passed upon the facts herein involved; (8) in holding that the ground rents had merged; (9) holding that the defendant is estopped by the verdict of the jury; (10) holding that the amount due on the encumbrances was judicially determined by the jury, and that, therefore, the plaintiff is entitled to the relief prayed; (11) in disallowing the defendant's claim for ground rent and interest; (12) in awarding the plaintiff $2,096.95 for mesne profits; (13) in not stating an amount between the parties; (14) in not dismissing the bill.

The exceptions were sustained, ARNOLD, J., filing the following opinion:

" Had the plaintiff filed a bill in equity instead of suing in ejectment in the first instance, the court would have made a decree, which would have settled all questions of title, possession, ground rent estates, mortgages, and other encumbrances, liens, claims and equities in one suit. But he resorted to the action of ejectment, which is a possessory action, in which all that he obtained was possession, nothing being done, or possible to be done, with the ground rents, mortgages or other encumbrances. The title had been in him, but it was at that

time in the defendant as trustee for the plaintiff. But he was required to do equity before he could demand equity, that is, he was required to pay the amounts due by the property, and which passed with it, and that amount the jury assessed against him. These consisted of outlays by the defendant for repairs and improvement to make the property tenantable and productive of income; also taxes and water rents. The items which a mortgagee or trustee may charge to the property are stated in Harper's Ap., 64 Pa. 315. What the defendant held for the plaintiff, and what the plaintiff recovered, was the equity, as it is called in the property. He did not recover the ground-rent estates and mortgages, because he never owned them. As to them he was and still is debtor to the defendant. No one ever heard of an ejectment for a ground rent or a mortgage. This is because they are incorporeal; they lie in grant and not in livery. The writ of ejectment demanded possession of the property; it contained no mention of the ground rents or mortgages. Indeed, the writ would have been demurrable if it had. The plaintiff would have been told that he must go into a court of equity. As it was, his remedy was incomplete. When, therefore, he returned to a court of equity to obtain the relief which he required, he opened the judgment or decree, and coming into a court of equity to have the benefit of the former judgment or decree, the court is at liberty to inquire whether the circumstances justify the relief prayed for: Mitford's Chan. Pl. 96; Lawrence Manufacturing Co. v. Janesville Mills, 138 U. S. 552. The whole inquiry is de novo.

" Here the plaintiff was the owner of three lots of ground, with buildings on them out of repair. He was involved in debt; his property was up at sheriff's sale, and he applied to Lewis Shallcross, Sr., for help. Shallcross was a creditor. He agreed to buy at the sheriff's sale and allow the plaintiff to redeem on payment of the purchase money and amounts due. Shallcross bought at the sheriff's sale on the first Monday of August, 1878. At that time he held two mortgages and a judgment, which bound the property. Instead of redeeming the property, Mawhinney fell further into debt, and a portion of the property was again sold for arrears of ground rent. Being hopelessly insolvent, Mawhinney, on November 25, 1878, in consideration of $100, surrendered the possession

to Shallcross and released and quitclaimed any title to the property. The title was then put in Shallcross' son, Lewis W., who bought the ground rents (three in number) and another judgment against Mawhinney. The two mortgages were assigned by Lewis to Lewis W. Shallcross. Mawhinney still clung to the hope of redeeming the property, and Lewis W. Shallcross treated him fairly by offering, as late as March 7, 1881, to reconvey the property on receipt of the amount laid out by him. Accordingly, an account was made up, showing a total of $12,016.98, from which he deducted rents collected, $1,991.19, and leaving $10,025.79 due to Shallcross on that day. No objection to this statement appears to have been made. But Mawhinney was no more able to pay the balance due on it, than he was to pay the smaller amounts for which the property had been sold, and the effort to redeem failed.

" Then he commenced an action of ejectment on December 8, 1881, and recovered a verdict on tendering the defendant $2,293.02. An analysis of the statement will show that this sum is less than the amount, which was due Shallcross for such items of expense as taxes, repairs and improvements, which passed with the possession, and were wiped out as claims by the verdict in the ejectment suit, thereby leaving yet unpaid such items as that suit could not conclude, that is, the ground rents, mortgages and judgment.

" The plaintiff thereupon filed this bill to compel the defendant to extinguish the ground rents, and satisfy the mortgages and judgment. The plaintiff has nothing to sustain his claim, except the judgment in the ejectment, and the argument he deduces therefrom, that having recovered the possession of the property he ought to have a clear title, although he has not paid for the ground rents or mortgages. This may be equity according to the ideas of non-paying debtors, but as a proposition in real equity and justice it is shocking. Much time and effort were given to show what the defendant claimed in the ejectment, but that is immaterial. It is not important whether he claimed for his ground rents and mortgages or not. The verdict is not conclusive on the accounts of the parties; it is only a credit on account of the claim : Lewis & Nelson's Appeal, 67 Pa. 153. As before said, the whole account is opened, the case is to be heard and determined de novo. The

defendant's claims and the plaintiff's credits are to be gone over to determine what was allowed. An examination shows that the defendant was not allowed anything for his ground rents or mortgages, and hence the plaintiff is not entitled to a decree for their extinguishment and satisfaction.

" It is also contended that there has been a merger of the ground rents and mortgages. Merger is always a question of intent, and is never allowed to take place contrary to the interest of the parties: Moore v. Harrisburg Bank, 8 Watts, 138; Wilson v. Gibbs, 28 Pa. 151; Bryar's Ap., 111 Pa. 81. There was no merger in this case.

" I have thus considered the whole case, but I might have been saved the trouble by referring to the proceedings in the ejectment case, subsequent to the affirmance of the judgment by the Supreme Court, reported as Shallcross v. Mawhinny, 7 Atlantic Reporter, 734. After the judgment had been affirmed, the plaintiff below applied for a rule to show cause why the Supreme Court should not attach to the order of affirmance a decree ordering the defendant below to satisfy the mortgages and extinguish the ground rents, but the rule was refused. This might have been because the court was of opinion that such a decree could not be made in an action at law, and also because of want of equity. Either way it shows that the plaintiff is not entitled to the relief claimed in this suit.

" The exceptions are sustained and the bill is dismissed with costs."

*Errors assigned* were (1–14) sustaining exceptions, quoting them; (30) dismissal of bill.

*William H. Staake*, for appellant.—The verdict in an equitable ejectment has the conclusiveness of a decree of a chancellor as to the matters litigated: Mathews v. Stephenson, 6 Pa. 498; Wharton v. Morris, 1 Dallas, 125; Seitzinger v. Ridgway, 4 W. & S. 472; Peebles v. Reading, 8 S. & R. 484; Burger v. Dankel, 100 Pa. 118; Edwards v. Morgan, 100 Pa. 335; Nicolls v. McDonald, 101 Pa. 519; Elbert v. O'Neil, 102 Pa. 304; Curry v. Curry, 114 Pa. 367; Reno v. Moss, 120 Pa. 68; Hess v. Calender, 120 Pa. 138; Wells v. VanDyke, 109 Pa. 331; Stafford v. Wheeler, 93 Pa. 462.

The defendant was not estopped by the verdict of the jury:

Eastman v. Cooper, 15 Pick. 286; 1 Stark. Ev. (4th Amer. ed.) 200; Dutton v. Woodman, 9 Cush. 255; McDowell v. Langdon, 3 Gray, 513. Extrinsic evidence of what was really litigated may be shown: Hood v. Hood, 110 Mass. 463; Legrand v. Rixey's Admin., 3 S. E. Rep. 871; Gardner v. Buckbee, 3 Cowen, 120; Packet Co. v. Sickles, 5 Wallace, 590; White v. Chase, 128 Mass. 158; Dutton v. Woodman, 9 Cush. 255; Sawyer v. Woodbury, 7 Gray, 499; Burlen v. Shannon, 99 Mass. 200; Miles v. Caldwell, 2 Wall. 43; McDermott v. Hoffman, 70 Pa. 52; Pendleton v. Richey, 32 Pa. 58.

In Pennsylvania an equitable ejectment answers wherever chancery would execute trust or decree a conveyance: Peebles v. Reading, 8 S. & R. 491; Connolly v. Miller, 95 Pa. 517; Hamm v. Beaver, 1 Gr. C. 452; Henry v. Raiman, 25 Pa. 355; Kensinger v. Smith, 94 Pa. 386; Roddy v. Harah, 62 Pa. 132; Webster v. Webster, 53 Pa. 161; Creigh v. Shatto, 9 W. & S. 82; Starr v. Pease, 8 Conn. Rep. 541; Peebles v. Reading, 8 S. & R. 484; Bear v. Whisler, 7 Watts, 144; Reed v. Murray, 11 Pa. 334; Henry v. Raiman, 25 Pa. 354; Meyers v. Hill, 46 Pa. 9; Treftz v. Pitts, 74 Pa. 343; Morrison v. Robinson, 31 Pa. 456; Zimmerman v. Eshbach, 15 Pa. 417; Kille v. Ege, 82 Pa. 102; Ege v. Kille, 84 Pa. 340.

It was error in the court below to treat the equitable ejectment as an ordinary action of ejectment: White v. Chase, 128 Mass. 158; Deitzler v. Mishler, 37 Pa. 86; Brawdy v. Brawdy, 7 Pa. 158; Remington v. Irwin, 14 Pa. 145; Christy v. Brien, 14 Pa. 249. All of the matters of account between the parties is res adjudicata: Given's Ap., 121 Pa. 260; Patch v. Ward, L. R. 3 Ch. App. 203; Morgan's Ap., 110 Pa. 271.

*Lewis Stover*, for appellees.—The plaintiff claimed in the ejectment suit possession only, and that is all he could claim under the pleadings. If these proceedings had been of such a nature that he could have claimed a conveyance in fee, these ground rents and other encumbrances might have been involved, and the conclusions of the master, that the jury "must necessarily have decided these facts," been true; but the jury were called to determine so much of the account only as was necessary to give the plaintiff possession, that depended upon what, under the pleadings, the plaintiff claimed. That was the land,

and of course, the betterments with it.   This very case is decided in Lewis & Nelson's Ap., 67 Pa. 153.

The ground rents were merged: Wilson v. Gibbs, 28 Pa. 151.   The bill is in effect a redemption bill.   But it is defective in neither showing payment nor offers of payment: Lanning v. Smith, 1 Parsons, 13.

The ejectment gave to the plaintiff nothing more than the lawful possession: Hamm v. Beaver, 1 Grant, 448.

OPINION BY MR. JUSTICE HEYDRICK, March 7, 1892.

At a very early date resort was had  in Pennsylvania to the action of ejectment as a remedy for the enforcement of equitable rights in respect to real estate.   This was a necessity, as has been frequently said, growing out of the want of a court of chancery, or the possession by the common law courts of such equitable jurisdiction as has since been conferred upon them.   But, although it was broadly declared in Peebles v. Reading, 8 S. & R. 484, that wherever chancery would execute a trust or decree a conveyance, the courts of this state, by the instrumentality of a jury, would direct a recovery in ejectment, it was not until the announcement of the judgment in Seitzinger v. Ridgway, 9 Watts, 496, that the true character of the action when employed as an equitable remedy was fully understood.   The point actually decided in the latter case was, that one verdict and judgment in an equitable ejectment was conclusive as to the title, but the reasoning upon which that decision was based proved that such judgment has all the conclusiveness of a decree in chancery as to every other matter litigated.   This is a legitimate result of the substitution of the common law action for a bill in equity.

Now, if Francis Mawhinney, instead of bringing his action of ejectment in the common pleas No. 1 of Philadelphia, had filed a bill in equity, averring that when his property was about to be sold by the sheriff he applied to Shallcross for counsel and assistance ; that Shallcross advised him to let the sale go on, and promised to purchase the property for him ; that, relying upon such advice and promise he made no further effort to save it, but permitted Shallcross to obtain the legal title for a nominal sum, and that the rents and profits had reimbursed Shallcross for his outlay and trouble ; and if the latter had

answered, admitting all the averments of the bill except that
he had been fully reimbursed, and averring that he had paid
out in ease of the estate moneys in excess of the rents received,
it cannot be doubted that it would have been decreed, among
other things, that an account be taken of the rents so received,
and of the moneys so paid out, and that the balance, whichever
way it might have been found, would have been decreed to be
paid by the party against whom it was found to the other.
And it is as little to be doubted that the decree so made would
have been alike conclusive as to the rents received and as to
amounts paid out in ease of the estate, so that neither party
could, in any future action, call the other to account in respect
to any of the matters so adjudicated.    To state this proposi-
tion is to call to mind the rule tersely expressed by Chief Jus-
tice DE GREY, in the Duchess of Kingston's Case, 2 Sm. L. C.
784, in respect to the conclusiveness of judgments as evidence,
because the decree as to the balance would have been directly
upon the amount of rents received and the amount of money
paid out.    And it could not have affected the conclusiveness
of the decree in this respect if the defendant had ineffectually
denied the trust, to enforce which the suit was brought; and
at the same time averred the expenditure of money for the
benefit of the estate.    Such denial might have cost him the
loss of credit for all betterments, at least, if the cause had
been decided by a chancellor less benevolent than the learned
judge before whom the ejectment was tried, as may be inferred
from Bleakley's Ap., 66 Pa. 187 ; a fortiori, it could not have
put him in a better position in respect to the matters litigated
than he would have occupied if he had frankly admitted the
trust.

Now, what might have been done in the equity side of the
court is precisely what was accomplished by the action of
ejectment.    The record does not, indeed, show that the sum
adjudged to be paid by the plaintiff to the defendant as a con-
dition precedent to the recovery of the land was the result of
an accounting in respect to the rents received and disburse-
ments made by the defendant, as it would have shown if the
proceeding had been by bill in equity.    But this is immaterial,
for, whenever a record is general, that is to say, when it does
not show what particular matters were litigated, it is competent

to show by extrinsic evidence what those matters were : Meyers v. Hill, 46 Pa. 9; Treftz v. Pitts, 74 Pa. 343. This was done in the present case, and the master found that the defendant gave in evidence at the trial of the ejectment the several bonds, mortgages and ground rents, which are the subject of the present controversy "for the purpose of receiving credit therefor in the amount of the conditional verdict in case the jury should decide the main issue in favor of the plaintiff." He could not have found otherwise from the evidence before him. The testimony of Judge BIDDLE, before whom the cause was tried, of Mr. Dougherty, who was counsel for the plaintiff, of the plaintiff's son, and of several of the jurors, and the stenographic report of the former trial, prove beyond controversy that the defendant not only gave these bonds, mortgages and ground rents in evidence, but that he presented to, and, under the direction of the court, sent out with the jury a "statement of the cost of the properties" in which the mortgages and ground rents were included along with such other items as purchase money paid to the sheriff, taxes and improvements, and that the trial judge instructed the jury that they should give the defendant credit for the different sums included therein, if they found for the plaintiff as to the land. The jury having found "for the plaintiff on his tendering to Shallcross the sum of $2,293.02," it is further significant of what was thereby adjudicated that there does not appear to have been any evidence to justify the condition annexed to the verdict, except the statement referred to, and the evidence by which it was verified; that no distinction was made in the statement or charge of the court between the mortgages and ground rents, and the other items of "the cost of the properties," and that, when the defendant offered in evidence an assignment to himself of the ground rents, he expressly offered it as "an extinguishment" of the ground rent. The conclusion is, therefore, irresistible, that the defendant elected to treat the ground rents and mortgages as merged in the legal estate acquired by him at the sheriff's sale, and claim the money invested in them as so much money paid out by him in ease of the estate which he would be entitled to recover before he should be required to restore possession to his cestui que trust. The verdict and judgment in the action of ejectment must, therefore, be treated

as an adjudication that the ground rents and mortgages were merged, and that there was due to the defendant from the plaintiff the sum of $2,293.02, as the result of an accounting in respect to the rents received and the several items contained in the plaintiff's "statement of the cost of the properties." The plaintiff having paid that sum, it was the duty of the defendant to satisfy the mortgages of record, and execute and deliver deeds of extinguishment of the ground rents. But the common law side of the court has no appropriate process by which it can enforce such duty, and hence the discharge of the rule granted in the ejectment suit for that purpose was conclusive of nothing. This bill was the proper remedy: Treftz v. King, 74 Pa. 350.

The liability of the defendant to account in this suit for the rents received by him subsequent to the trial of the ejectment not being controverted, the finding of the master upon that branch of the case requires no discussion.

The decree of the court below is reversed at the costs of the appellee; the bill of the plaintiff is reinstated, and the record is remitted with instructions to the court below to enter a decree granting the relief recommended by the master.